UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DELAINA PATTERSON, as Personal
Representative of the Estate of SHERRILL
TURNER, Deceased; and ROBERT
TURNER, a Minor, Individually, By His Next
Friend, DELAINA PATTERSON

                Plaintiffs,                Case No. 08-cv-10732
                                                   HON. DENISE PAGE HOOD

v.

CITY OF DETROIT, SHARON NICHOLS,
and TERRI SUTTON,

                Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND DISMISSING THE COMPLAINT

**I.    INTRODUCTION**

This matter is before the Court on Defendant City of Detroit's ("City") Motion for Summary Judgment **[Docket No. 15, filed July 21, 2008]**. On September 16, 2008, the Plaintiff filed her Response **[Docket No. 26]**. This matter is also before the Court on Defendant Terri Sutton's Motion for Summary Judgment **[Docket No. 16, filed July 24, 2008]**, to which the Plaintiff filed a Response **[Docket No. 19, filed Aug. 14, 2008]**[1]. This matter is also before the Court on Defendant Sharon Nichols' Motion for Judgment on the Pleadings and Dismissal of Plaintiff's Complaint with Prejudice pursuant to FRCP 12(c) **[Docket No. 21, filed Aug. 26, 2008]**, to which the Plaintiff filed

---

[1] The Court also notes that Plaintiff filed a Supplemental Brief to this Response **[Docket No. 25, filed Aug. 16, 2008]**, which is considered herein.

a Response **[Docket No. 26, filed Sept. 16, 2008]**.

## II.    STATEMENT OF FACTS

The undisputed facts demonstrate that on February 20, 2006, five (5) year old Robert Turner was at home with his mother, Sherrill Turner. Shortly before 5:59 p.m. that evening, Robert noticed that his mother had fallen and appeared to be in need of medical attention. At approximately 5:59 p.m., Robert called 911 in an effort to summon assistance for his mother. Robert was connected to the Detroit Emergency Service Operator ("ESO"), Sherry Nichols, and informed her that his mother had passed out:

> ESO Nichols: Emergency 911, where is the problem?
> Robert: My mom has passed out.
> ESO Nichols: You over at Spruce?
> Robert: Huh?
> ESO Nichols: You on Spruce?
> Robert: My mom...
> ESO Nichols: Where's Mrs. Turner at?
> Robert: Right here.
> ESO Nichols: Let me speak to her.
> Robert: She's not gonna talk.
> ESO Nichols: Okay, well I'm gonna send the police to your house and find out what's going on with you.
> ESO Nichols: 1950 Spruce Apt. 3.

(911 Call Transcripts). An emergency vehicle was not deployed as a result of this phone call. When the police or medical services failed to arrive, Robert called 911 a second time. During the second call, Robert spoke to ESO Terri Sutton and informed her that his mother had passed out:

> ESO Sutton: Emergency 911, where is the problem?
> Robert: My mom has passed out.
> ESO Sutton: 1950 Spruce. Is that the Robert Turner residence?
> Robert: Yeah.
> ESO Sutton: Where the grown-up at?
> Robert: In her room. My mom...
> ESO Sutton: Let me speak to her. Let me speak to her before I send the police over there.

2

| | | |
|---|---|---|
| Robert: | She passed out. | |
| ESO Sutton: | Huh? | |
| Robert: | She's not gonna talk | |
| ESO Sutton: | Okay. Well, you know what then? She's gonna talk to the police. Okay. She's gonna talk to the police because I'm sending them over there. | |
| Robert: | She's still not gonna talk. | |
| ESO Sutton: | I don't care. You shouldn't be playing on the phone. [pause]. Now put her on the phone before I send the police out there to knock on the door and you gonna be in trouble. | |
| Robert: | Argh!!! | |

(911 Call Transcripts). The police arrived at the scene at approximately 9:20 p.m. and found Sharon Turner unresponsive. Emergency Medical Services ("EMS") was dispatched to the home at that time, and arrived at the Turner residence at 9:40 p.m., only to declare Sharon Turner dead at the scene. At 10:08 p.m., a medical examiner arrived at the scene and noted that the deceased body was still warm to the touch, and that rigor mortis had not set in. Following an autopsy, a medical examiner concluded that Sharon Turner died due to dilated cardiomyopathy.

Delaina Patterson filed this action as the personal representative of the estate of the deceased, Sherrill Turner, and on behalf of the deceased's son, Robert Turner, a minor. The Plaintiff brought this § 1983 action against the City of Detroit, Sherry Nichols and Terry Sutton, alleging violations of Sherrill and Robert Turner's Fourteenth Amendment rights. More specifically, Plaintiff alleges that Defendants' actions and omissions were performed knowingly, and caused the Plaintiff to suffer an unnecessary and intentional infliction of pain by failing to obtain medical treatment and failure to properly train, supervise, develop and implement policies and procedures. The Court also notes that the Plaintiff has initiated a state law case against both Terri Sutton and Sharon Nichols in the Wayne County Circuit Court.

**III. STANDARD OF REVIEW**

3

## A. Federal Rules of Civil Procedure 12(c) and 12(b)(6)

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure applies the same standards as a motion to dismiss under Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007). Under the applicable standard, the court reviews the complaint in a light most favorable to the non-moving party, accepting as true all well-pled factual allegations. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) (citing *United States v. Moriarity*, 8 F.3d 327, 336 (6th Cir. 1993)). The court need not accept as true legal conclusions or unwarranted factual inferences contained in the pleadings. *Id.* (citing *Gergory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). To survive the motion, "the complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Id.* (citing *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

## B. Federal Rule of Civil Procedure 56(c)

Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2000). "Materiality" is determined by the substantive law claim. *Boyd v. Beappler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could

return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonable find for the plaintiff." *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

**IV. LAW & ANALYSIS**

All of the above named Defendants have moved this Court for summary disposition of the matter asserting roughly equivalent legal theories. Defendant City of Detroit has filed a Motion for

Summary Judgment arguing that Plaintiff has failed to plead a constitutional violation as the Fourteenth Amendment does not confer an affirmative governmental right to aid. Defendant Nichols moves for summary dismissal arguing that she is entitled to qualified immunity. Finally, Defendant Sutton moves for judgment on the pleadings also arguing that Plaintiff has failed to demonstrate a clearly established right under the Fourteenth Amendment.

### A. Relief Under the Due Process Clause of the Fourteenth Amendment

Both Defendant Nichols and the City of Detroit argue that the Plaintiff has failed to state a claim under the Fourteenth Amendment. More specifically, the Defendants argue that under these circumstances 42 U.S.C. § 1983 liability cannot be imposed for failure to provide needed medical assistance. Both Defendants further posit that the Plaintiff's claim does not fall within any recognized exception that would impose liability on a state actor for failing to provide medical service. In response, the Plaintiff relies on *Ewolski v. City of Brunswick*, to argue that state officials may violate the Due Process Clause when their affirmative actions directly increase the vulnerability of citizens to danger or otherwise place citizens in harms way. 287 F.3d 492, 506 (6th Cir. 2002). Plaintiff also submits that the Due Process Clause does not generally create an affirmative duty to protect, but these facts fall within a recognized exception to the general rule.

To bring a successful claim under 42 U.S.C. § 1983, a plaintiff must establish that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right. *Sperle v. Mich. Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002) (citing *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001)). The Defendants do not dispute that they were acting under the color of state law at all times relevant to the present suit. As a result, the contention centers on whether the Defendants deprived Plaintiff of a substantive due process right to life and liberty by

6

failing to provide necessary medical services.

The Due Process Clause prohibits any state from "depriving any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Supreme Court has recognized that "the Due Process Clauses [of the Fifth and Fourteenth Amendments] generally confer no affirmative right to government aid, even when such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). The Sixth Circuit has provided that "it is not a constitutional violation for a state actor to render incompetent medical advice or fail to rescue those in need." *Peete v. Metro. Gov't*, 486 F.3d 217, 223 (6th Cir. 2007) (citing *Deshaney v. Winnebago County Dep't of Soc. Services*, 489 U.S. 189, 196, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)). However, there are two exceptions to this rule, instances were the state is obligated to aid or protect an individual from further danger: (1) the custody, or special relationship exception[2], and (2) the state created danger exception. *Peete*, 486 F.3d at 223; *see also Sperle*, 297 F.3d at 491. The Plaintiff maintains that the current factual circumstances merit relief under the state created danger exception, this Court disagrees.

The Supreme Court in *Deshaney*, indicated that liability may be imposed if a state actor in some way created the danger. 489 U.S. at 201. The Sixth Circuit explained and expanded this area by creating the state-created-danger theory, "[l]iability under the state-created-danger theory is predicated upon the affirmative acts by the state which either create or increase the risk that an individual will be exposed to private acts of violence." *May v. Franklin County Bd. Of Comm'rs*,

---

[2] It does not appear that the Plaintiff is arguing the custody/special relationship exception. However, the Sixth Circuit defines "custody" as the "intentional application of physical force and show of authority with intent of acquiring physical control. *Ewolski v. City of Brunswick*, 287 F.3d 492, 506 (6th Cir. 2002). Under that standard, the Defendants did not take decedent into custody.

7

59 Fed. Appx. 786 (6th Cir. 2003) (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). To show a state-created danger, plaintiff must show: (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff. *Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003).

Under the instant circumstances, Plaintiff's claim fails as a matter of law because she has failed to demonstrate an *affirmative* act by which the state increased the risk of injury. Plaintiff argues that both Defendants Nichols and Sutton are 911 operators with a duty to expedite the involvement of police and EMS in response to situations identified by callers. Plaintiff further argues that Robert Turner's call sufficiently alerted them of a need to provide "immediate medical attention," but neither Defendant "dispatched an EMS unit to the Turner household."

The Sixth Circuit has held a "failure to act is not an affirmative act under the state-created danger theory." *Jones v. Reynolds*, 438 F.3d 685, 691 (6th Cir. 2006) (citing *Cartwright*, 336 F.3d at 493). Further, Sixth Circuit precedent demonstrates that the failure to act is not an affirmative act for the purposes of the state-created danger theory. *Schroder v. City of Fort Thomas*, 412 F.3d 724, 728-729 (6th Cir. 2005) (failing to respond to parental complaints about the lack of enforcement of a residential speed limit in a specific neighborhood was not an affirmative act); *Sheets v. Mullins*, 287 F.3d 581, 588-89 (6th Cir. 2002) (failing to pursue and investigate a domestic-disturbance call was not an affirmative act); *Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279 (6th Cir. 2000) (failing to call an ambulance for an obviously injured citizen was not an affirmative act);

8

*Sargi v. Kent City Board of Education*, 70 F.3d 907, 912-13 (failing to obtain immediate medical assistance for a seizure victim instead of taking her home was not an affirmative act); *Peach v. Smith County*, 93 Fed. Appx. 688, 2004 U.S. App. Lexis 2885, at *6-8 (failing to respond to a call informing police that a woman battered by her husband was returning to spend time with him and that he had a gun was not an affirmative act).

The Sixth Circuit also notes that in cases where it is difficult to determine whether the alleged conduct should be treated as a failure to act or as action, that the determination should be a failure to act when the alleged conduct does not create or increase the risk of peril. *See Jones*, 438 F.3d at 692 ("Whether the conduct of government officials in some cases should be treated as a failure to act or as action 'may be a difficult question in the abstract,...but we have always treated governmental conduct as 'falling on the inaction side of the line,' when it does not create or increase the risk of peril posed by the private actor.") (internal citations omitted); *see e.g. May v. Franklin County Comm'rs*, 437 F.3d 579, 2006 U.S. App. Lexis 3528, at *17 (6th Cir. 2006) (act of dispatching officers to the scene of a domestic dispute did not increase the risk of harm to the victim and thus did not constitute an affirmative act). As these cases indicate, when the state action or inaction "neither increase[s] decedent's risk of harm nor render[s] her more vulnerable," *Sargi*, 70 F.3d at 913, the plaintiff cannot establish a cognizable affirmative act.[3] The Defendants' failure to appropriately handle the incoming calls for help resulted in tragedy; and while the Court is sympathetic to the tragic events giving rise to the instant litigation, these events do not support a

---

[3] Even if this Court were to construe the mishandling of the 911 calls as affirmative acts, Plaintiff is still unable to establish the first prong of the state created danger exception since Plaintiff cannot demonstrate that Ms. Turner was exposed to "an act of violence by a third party." *Cartwright*, 336 F.3d at 493.

claim for relief under the Fourteenth Amendment. Accordingly, Plaintiff's claim must be dismissed as a matter of law.

### B. Qualified Immunity

This Court need not conduct a qualified immunity analysis as it finds that the Plaintiff is unable to establish a Fourteenth Amendment violation.

## V. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant City of Detroit's Motion for Summary Judgment and Dismissal **[Docket No. 15, filed July 21, 2008]** is GRANTED.

IT IS FURTHER ORDERED that Defendant Terri Sutton's Motion for Summary Judgment **[Docket No. 16, filed July 24, 2008]** is GRANTED.

IT IS FURTHER ORDERED that Defendant Sharon Nichols' Motion for 12(c) Judgment on the Pleadings **[Docket No. 21, filed Aug. 26]** is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Complaint **[Docket No. 1, filed Feb. 21, 2008]** is DISMISSED with prejudice.

|  |  |
|---|---|
| Dated: November 10, 2008 | S/Denise Page Hood<br>Denise Page Hood<br>United States District Judge |

I hereby certify that a copy of the foregoing document was served upon counsel of record on November 10, 2008, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager